The next case, number 22-1907, Malcolm Wiener v. MIB Group, Inc. et al. At this time, would counsel for the appellant please introduce himself on the record to begin? Good afternoon, Your Honors. Sorry I'm between you and lunch, but I'll do my best. May it please the Court, my name is David Webert, and I represent Malcolm Wiener, who's the plaintiff appellant. This is a data breach case with a very unusual twist that happens to make it quite easy for the plaintiff to satisfy this court and the Supreme Court's case law about the requirement to show a concrete injury in a data breach case or a similar case. And so what I'm talking about here is usually you've got a hacker, mysterious hacker, unknown, unknown misconduct. And so that creates all kinds of standing issues that this court talked about recently in Webb and the Supreme Court talked about in TransUnion. Here, no hacker. This was an inside job done by the entity that had a grave responsibility under federal law to keep confidential the information. But most importantly for standing, the actual misuse is all documented in court filings of a federal court case. That's pretty unusual. So the actual misuse is not something like in Webb where you have to do some circumstantial evidence timing to get from the lack of confidentiality, a data breach to a false tax return. And this court found that one. And here it's in writing. So the declaration filed by the general counsel who's the defendant of the insurance information gathering group, MIB. Can I ask you about the procedural posture of the case? On appeal, you clearly address the concrete injury piece of the standing issue, but there's little if nothing said in your opening brief about traceability or retraceability. And whereas the plaintiff has the burden of showing standing and has to meet all three requirements, why is your arguments about the other two components not waived? Oh, I think we addressed them, Your Honor. It's just that they're so explicitly connected here because, like I said, you have the adverse, you have the misuse in one document. You have the illegal disclosure and the misuse because it's being used against the consumer in a lawsuit. So traceability is, there's no circumstantial evidence. It's direct evidence. So it's a direct evidence case on that. And then redressability, money is, as this court said in one sentence, I mean the court in Webb only spent a couple sentences on traceability and redressability where it was a slightly more complicated question. The actual misuse wasn't, there wasn't a chain of causation like we have here. So here it's an even simpler analysis because it's in the same declaration where the illegal breach of confidentiality occurs and then it's being used against the plaintiff. So the actual misuse is all documented. So that's the traceability. And then redressability, as this court said in a sentence, money. Money is redress. So I think they're very uncomplicated issues. And I think the other side. Counsel, can I ask you? Yes. So it seemed that you were arguing about two possible ways that you have Article III standing. One is an invasion of privacy argument. And one is money damages from costs incurred in responding to the testimony in the North Carolina case and the stress, the emotional distress and the money that was spent by your client. And I guess the question I want to ask you is I think what your opposing counsel is arguing is that all litigation by its nature involves stress and costs. And so if we were to conclude here that when your client brought this case based on costs and stress he incurred in a different case, that that's just too broad a basis for Article III standing because then everyone could say, you know, when a witness testified in this other case in North Carolina, their testimony cost me money because my lawyer had to oppose it, prepare for it, oppose it, and it cost me stress because it was testimony against my claims. So again, I'm sorry this is a little bit of a long question, but it's just every litigation involves money and stress for the party. So isn't this just a little too broad to be an Article III injury because then everybody could use what happened in one case to file a new case? No. First of all, we cite cases saying that, and the restatement is a very well-recognized, in certain causes of action you can recover for fees of malicious prosecution. You'd be getting rid of malicious prosecution if you were to say you can never. That would be totally changing the law. I'm not saying we can never. I'm just saying in the facts here where somebody's upset and has to respond to what one witness said in another case, is that really enough for Article III standing? It's only a plausible claim of injury, and under Webb all you have to have is an actual misuse. The actual misuse is documented. Webb didn't even require anything further for the actual misuse. It required other things for the risk of future misuse. So here we're not talking about a future possible. So all we're talking about is Article III standing. You don't bring cases. I don't bring cases. I'll go out of business pretty quickly if I bring cases based on having Article III standing at no merit. So usually there is not a claim. But here we have a brazen act. It's a crime. What happened? By the general counsel of a large, you know, you can collect against this entity. So I don't see these kinds of cases very often where the person does it in writing, violates a federal statute which has compensatory punitive damages and attorney's fees. So in this case, you know, we would seek those remedies. A lot of times there would be no remedies for that, and I wouldn't bring a case like that. But in this case, Congress was serious about protecting this information, and the general counsel of a consumer reporting agency thinks he's above the law, flouts it, puts it in a declaration, and the major member of the group uses it to throw the case out. And if it were true, if you look at Paragraph 15, the last sentence, he goes for the kill because he said, that means no one else looked at it. And if that's true, that's a complete defense. And so he added that sentence. And that's the lie. This is a nasty, I mean, this is really ugly stuff. Well, I understand why your client was upset about that testimony. I really do. I'm upset about it because it's a violation of, yeah. I looked at the case closely, but I guess I just sort of go back to, you know, is that there's an invasion of, I'm a little confused between the invasion of privacy claim and then very separately because it was two different theories you pursued, the notion that stress and costs from defending against a witness's testimony in a prior case is enough to give you Article III standing. So I'm just wondering about that specifically versus the invasion of privacy violation. Right. And I agree with under Webb, which we didn't have the benefit of in our reply brief, we shouldn't focus on emotional distress. That's usually the last resort. This is easier because it's a monetary harm. So I can just tell you, since you're lawyers, you know, when the other side files a motion to exclude your expert witness, you've got to respond or it's malpractice. So we did respond, and in the addendum I put, they kept using this argument at trial and even post-verdict, and we responded. So you know there were legal fees, but we had to respond. And in Webb it says, just your own time, the plaintiff's own time is enough. This is the plaintiff having to pay a lawyer. So all we're thinking about here is concrete injury. If Webb says the plaintiff's time dealing with a misuse is enough here, the plaintiff had to pay a lawyer. Lawyers don't work for free. So all you need is a monetary injury. The Supreme Court has said nominal damages are enough. So I think it's an overwhelming case, and the district court got a little misled because they were told attorney's fees are never a basis for standing. And, of course, that's true if I were seeking standing based on anything to do with this case. We did research for this case. We're not asking for it. That's not the basis for standing. It's all in the other case. And malicious prosecution, there are times when it's very important that that be recoverable, and there just so happened to be a violation of the Federal Credit Reporting Act in open court by a major player, and so that's why there has to be this litigation. They weren't even a party to that litigation. So we're not suing. It's not round two. Counsel, I mean, from your point of view, in order to satisfy standing, you don't have to win on both the pecuniary harm and the mental distress. If you can get, I mean, I must acknowledge the pecuniary harm seems to be, as alleged, it's actual, particularized, and very concrete. And, in fact, as I understand it, when the lawsuit was filed, the costs had already been incurred. Isn't that correct? They were paid long ago, years ago. So they were actual, they were real. It had already happened. I agree. That's the simpler claim. Under Webb, the court wouldn't even move on to emotional distress. But what happened below, I gather, is when there was the oral argument, I guess it's your position that the district court really only focused on sort of the mental distress and the breach of privacy. It looks to me like counsel at that point never had an opportunity to argue this alternative version of standing, which is the pecuniary harm. That never even came up. If you look at the transcript, it looks like it never came up. Is that right? Yes. And if I can just explain a teeny bit, the objection to the motion to dismiss has a detailed argument about the expense of the attorney's fees being a basis for standing. I can give you the page number. So if you look at the opposition, the oral argument was five minutes in total. I wouldn't call it an oral argument with all due respect to the district court. That was not a fair oral argument. I've never seen she was cut off and then never allowed to talk again. And the district court gave no reasoning. It said, I disagree with you to the defense counsel. And then it said, I dismiss for those standing and never articulated anything. So I don't think that merits much deference from this court on appeal, even persuasive. It's not a good show of due process when it's five minutes or argument. Cut her off. She said she had two points. She got one out and he never let her speak again. So I think it would be a violation of due process. And I don't think this court would even want to come close to giving any deference to what was said at that oral argument as a waiver because she wasn't even allowed to finish. She said, two points. Usually a judge will let you make your two points. So that was a pretty stingy oral argument. Let me ask you just one other thing. I think you argued that MIB had waived any 12B6 failure to state a claim arguments. I'm just curious about that because that's not what's on appeal. So I'm wondering how they could have argued failure to state a claim when what's on appeal is standing. We have to assume that you have, right? We're not touching whether there's a valid claim when we're looking at standing. Right. They could have raised it on appeal as an alternative ground. And we didn't know in our opening brief, but then they didn't. So on appeal they've waived it. I'm not saying they've waived it on remand, but they didn't force it. You're saying they've waived it as an alternative ground for affirmance? On appeal. Because they didn't brief it. And so I didn't respond to it in reply, and I'm not prepared to oral argument because they signaled to me, it's totally their right to focus on the issue that the district court ruled on. They could have argued both on appeal, but they didn't. That's all I meant by you don't need to worry about that one because they dropped it. It's an adversarial system. That's all. I feel like there are, I have to go back and look at the brief, but it seems that in arguing against standing there were sort of echoes of an argument on the merits that these kinds of claims have, they're problematic for some of the reasons that my colleague indicated. But to me that sounded a bit like that's going to be a 12B6 argument that you're going to have to deal with later, but that's not really a standing argument, is it? This court in Webb made that very clear. I think the other side got a little confused about that. Absolutely, those are 12B6 or summary judgment, but they didn't, the Supreme Court has been very clear, this court's been very clear, the merits are not, they're getting into the merits that's not standing. You have to assume in this court, Senate Webb, that you can get damages. If you can't get damages, that will be resolved on a 12B6 or later on merits. So this court in Webb said we don't, we're not going to touch those issues because they're not standing issues. So I agree 100%. Thank you, counsel. Thank you. At this time, if counsel for Applee, please introduce himself on the record to begin. May it please the court, my name is Todd Stelter, counsel for MIB and Sager. As it pertains to injury, the first amended complaint in this case is overly vague and conclusory. The district court was correct to exercise its discretion in rejecting it. How are attorney's fees vague? The attorney's fees component is rejected by the Supreme Court case in Clapper v. Amnesty International. Respondent's theory of injury in this case is too speculative. In Clapper, respondents argued that their injury was that they were forced to make costly and burdensome measures in response to the violation. The Supreme Court held that respondents could not manufacture standing by choosing to make expenditures based on hypothetical future harm. Counsel, but here, I think what's different is it's not future or hypothetical harm. It's harm that had already happened. So the plaintiff had already spent the money on the attorney's fees. That is not in the complaint, Your Honor. The complaint says attorney's fees. There is no factual enhancement to that, which is required by Hawk and Donner v. Genzyme. There is no necessary heft. It just says financial harm, paragraph 43, and leaves it at that. But he says attorney's fees as a result of the disclosure. So it directly attests whatever fees are tied to the disclosure itself. You have a highly attenuated chain of possibilities here. You have a pending lawsuit in the Western District. First of all, the last 10 minutes, none of that is actually in the complaint. This has all come out in briefing for this appeal. But if we're going to get into the North Carolina case, they asked for their fees in the North Carolina case. There's a complaint in North Carolina that says give us all of our fees, give us all of our costs. That case is still pending, and they can recover all of their fees and all of their costs in that North Carolina case. But I thought the claim with which the request for attorney's costs and fees was made has been dismissed, hasn't it? Case is pending, interlocutory order, $8 million judgment. None of us know how that's going to come out. I'm sorry. I thought the Fourth Circuit remanded the case, and it's back at the district court, and then there's been some briefing, including in August. Correct. And I believe the record shows that the claim on which the attorney's fees and costs was requested was dismissed. Are you saying that's incorrect? And if so, can you point us to where in the record? All of the orders in that case are interlocutory. I know that the complaint asked for fees and that that case is not final. So it's a future hypothetical injury is what they're stating. I think I'm reading from the complaint, and I read this. The voluntary disclosure of plaintiff's private consumer report information to AXA was after discovery had concluded in the underlying action. Thus, plaintiff incurred, past tense, it's already happened. Thus, plaintiff incurred attorney's fees and costs associated with having to respond to information litigation. That's not future speculative. It's describing something that has already happened. To follow up on my colleague's question, what's speculative about that? The Supreme Court in Clapper refused to endorse standing theories that rest on speculation about the decisions of independent actors, such as what's going to happen ultimately in the case in North Carolina. The court warned about enterprising plaintiffs that simply make expenditures based on subjective fear of some hypothetical future outcome. Counsel, there were no expenditures based on a hypothetical future outcome. What happened was there was a witness, and the plaintiff had to respond to the witness in the litigation. You can't just not respond to testimony, especially when that testimony suggests that your entire case is meritless. It's not really optional to respond to that testimony. I'm trying to understand what you're saying. Just because there's a chance, let's assume there's still a chance that plaintiff could recover those costs and fees in the North Carolina case, that doesn't mean the plaintiff hasn't been injured. It's just a question of who's going to pay to compensate for that injury. Again, what is speculative about the actual injury? I think you have to go back and look at what the alleged violation is itself. The alleged violation is vague. Counsel calls it criminal. It's nonsense. The entire case apparently revolves around a disclosure that took place tangential to years-long pending litigation in the Western District of North Carolina that was initiated by Weiner. And there, Sager allegedly disclosed the fact that nobody looked at Weiner's file. That's all. This is at paragraphs 32 and 35 of the First Amendment. But that would have been relevant, pertinent to the issues in that lawsuit. Because the inference was that he had not tried to get other life insurance because no one had sought to get that information. I'm sorry, I'm not following your question, Your Honor. The information that was disclosed, which was nobody had made an inquiry, was relevant to his theory of damages in the other lawsuit, because he was saying that he was unable to get other policies, whereas the affidavit submitted suggested that he had never applied for any other life insurance policies. That was the paramount import of what that affidavit meant to his trial. And therefore, he had to respond to that. How is the disclosure of the fact that nobody looked at his file an invasion of privacy? I'd like to address the Webb case, since it came out on the 30th and we weren't able to, the 30th of June, which is after both first briefs were filed. The court in Webb said that the injury there was like the tort of invasion of privacy. And they defined the invasion of privacy in Webb. They said invasion of privacy based on appropriation of another's name or likeness, that's not what we're talking about here, which protects the interest of the individual in the exclusive use of his own identity. That's not what we're talking about here. None of that happened here. Here you have Sager disclosing in a litigation context that nobody looked at Wiener's file. That's it. That's very different. The most important part of Webb is footnote five. And if there's one thing I can put in your Honor's heads in the remaining time that I have, is that in Webb footnote five, this court said that the plaintiffs were not arguing that the exposure of their PII, their personally identifying information, which this is not, in the breach there, that that was itself an intangible harm sufficient to confer standing. Rather it was the material risk of future misuse, which was the concrete harm. The First Circuit in Webb discards their claim in footnote five here. The harm caused by the exposure to the risk of some sort of future identity theft. Are you saying that what they are alleging, the disclosure of the information that no one had looked, that that in and of itself is not a fair credit claim violation? It's not. You have to have a plausible theory. There's a plausibility standard. Are you saying that that's not a violation? What I'm saying is it does not create a plausible injury. There's no plausible injury here, because you have a benign statement. Those are two different things. If it's a violation, and then the next question is, did the violation result in an injury? I'm trying to figure out if you're saying it's not even a violation. It's not an injury, and the disclosure did not cause an injury traceable to the disclosure. So it's both. There's no plausible injury here. I never heard an answer to the first one. Is it a violation? We filed a motion to dismiss on 12B6. As opposed to there was no injury. In other words, there may have been a violation, but there was no injury, which would be the standing issue. You have to look at the alleged violation, and then second, you have to look at the alleged injury. So in other words, to get to your plausibility standard in Hawk and Donner, is the alleged injury itself plausible, part one, and secondly, is it plausible that the alleged violation caused it? What I'm doing is the second part in this argument is saying that violation does not plausibly cause this. They chose to go into the northern district and file motions. The judge in North Carolina called the motions meritless. That's their choice, but again, if I can go back to what I started with, the Supreme Court Clapper case prevents this. You cannot say I'm afraid of what's going to happen, so I have to go file these motions. I have to go incur these fees, because Clapper says that is not, you cannot anchor your standing in federal court on your fear of something happening. They chose to incur these expenditures. They filed these motions that were meritless. We would ask that the court affirm the district court's dismissal. Thank you, counsel.